IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

ANNE FELLERMAN,

                              Plaintiff,

             v.                          Civil Action No. 03:09-CV-803

AMERICAN RETIREMENT CORPORATION
(ARC) IMPERIAL PLAZA, INC., et al.,

                              Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on three motions arising out of Plaintiff Anne Fellerman's complaint. Defendant ARC Imperial Plaza, Inc. ("ARCIP") has filed a Motion to Compel Arbitration (Dock. No. 7), asking the Court to stay this action pending the outcome of arbitration pursuant to 9 U.S.C. § 3 (2006). In response, Fellerman has filed a Demand for Jury Trial on Arbitration Issues (Dock. No. 22) pursuant to 9 U.S.C. § 4. Fellerman has also filed a Motion for Leave to File Amended Complaint (Dock. No. 18) requesting punitive damages. After examining the motions, the associated briefs, and the Complaint and holding a hearing on the matter, the Court GRANTS ARCIP's Motion, DENIES Fellerman's Demand for Jury Trial on Arbitration Issues, and GRANTS Fellerman's Motion for Leave to Amend Complaint.

**I. BACKGROUND**

Imperial Plaza is a senior assisted living facility operated by ARC Imperial Plaza, Inc. in Richmond, Virginia. ARCIP is a subsidiary of American Retirement Corporation (Dock. No. 2). On July 1, 2008, Lawrence Fellerman, acting as power of attorney, contracted with Imperial Plaza to house and care for his mother, Plaintiff Anne Fellerman (Fellerman Resp. to ARCIP's Mot. to

1

Compel Arbitration, Ex. 1). That contract contains two parts. The first part is a Residency Agreement between Anne Fellerman and "Brookdale Senior Living Imperial Plaza, Inc." The second part is a Binding Arbitration Agreement. The header of the Binding Arbitration Agreement reads "American Retirement Corporation." Both documents were signed by Paige West, in her capacity as an employee of "Imperial Plaza."

The Binding Arbitration Agreement requires, inter alia, that all "claims, controversies, disputes, or tort action [sic] arising out of or relating in any manner to the treatment or delivery of services" shall be submitted to arbitration. It specifies that the arbitrator must be a member in good standing with the American Arbitration Association ("AAA"). It further specifies that "[t]he arbitration proceedings shall be governed by the rules of AAA."

On November 28, 2008, Anne Fellerman was awakened by Certified Nurse Aide Rebecca Catherman and taken to a bathroom to be toileted and changed. Fellerman slipped and fell in the bathroom, sustaining injuries to her left leg. Thereafter, she was transported to St. Mary's Hospital, where Fellerman was diagnosed with a spiral distal left femur fracture with displacement. She underwent open reduction and internal fixation surgery to repair the injury. Fellerman remained hospitalized until March 9, 2009, at which time she returned to the care of her son.

Fellerman thereafter filed this diversity suit, alleging that ARCIP is vicariously liable for the negligence of its employees under the doctrine of respondeat superior (Dock. No. 1). Seeking to enforce the Binding Arbitration Agreement, ARCIP then filed this Motion to Compel Arbitration (Dock. No. 7). Fellerman subsequently filed a Demand for Jury Trial on Arbitration Issues (Dock. No. 22). Fellerman also filed a Motion for Leave to Amend Complaint (Dock. No.

18), in order to correct the Defendant named in the suit and add a prayer for punitive damages. Each motion is discussed below.

## II. ARCIP'S MOTION TO COMPEL ARBITRATION

Fellerman resists ARCIP's Motion to Compel Arbitration on two grounds. First, she argues that ARCIP cannot enforce the arbitration because it is a nonsignatory to the Binding Arbitration Agreement. Second, she argues that, because AAA is unwilling to administer the arbitration of this dispute, the prescribed forum is integral to the contract but now unavailable.

### A. Whether ARCIP May Enforce the Binding Arbitration Agreement

Fellerman's complaint alleges that ARCIP operated Imperial Plaza at all relevant times and that its agent's negligence gave rise to this dispute (Dock. No. 1). Fellerman does not deny that the arbitration agreement is sufficiently broad to cover this dispute. Rather, she argues that ARCIP is not a party to the Binding Arbitration Agreement and thus cannot compel arbitration.

Under the Federal Arbitration Act, a court must stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. The Supreme Court has long recognized and enforced a liberal federal policy favoring arbitration. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983). However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960). It follows that signatories to a contract containing a valid arbitration agreement can enforce that agreement against each other. State contract law governs issues concerning contract formation. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

Thus in determining whether ARCIP is a signatory to the Binding Arbitration Agreement, Virginia law controls. In Virginia, a party to a contract may be identified by the name of the party's agent. Horner v. Holt, 187 Va. 715, 724 (1948); see also Faison v. Hughson, No. CL08002623-00, 2010 Va. Cir. LEXIS 20, at *9-11 (Va. Cir. Ct. Jan. 22, 2010); Restatement (Second) of Contracts § 131. Moreover, an undisclosed or unidentified principal[1] to a contract is a party to that contract with the same rights, liabilities, and defenses as if the principal, instead of the agent, had made the contract personally. Restatement (Third) of Agency §§ 6.02, 6.03; see, e.g., Sec. Loan & Trust Co. v. Powell, 119 Va. 231, 235 (1916). An agency relationship "may be inferred by the conduct of the parties and from the surrounding circumstances." Accordia of Va. Ins. Agency, Inc. v. Genito Glenn, L.P., 263 Va. 377, 384 (2002). "[W]hether an agency relationship exists is a question to be resolved by the fact finder unless the existence of the relationship is shown by undisputed facts or by unambiguous written documents." Id. (citation omitted).

Here, Fellerman says that she did not contract with ARCIP. She notes that Brookdale Senior Living Imperial Plaza, Inc., the entity named in the Residency Agreement, is the party whom she believed to be the contract principal. And she submits an affidavit by Lawrence Fellerman claiming that he was told to disregard the heading "American Retirement Corporation" printed at the top of the Binding Arbitration Agreement (Fellerman Mot. for Leave to Respond to ARCIP's Brief, Ex. A (incorporated by reference)). Fellerman states that she does

---

[1] "A principal is undisclosed if, when an agent and a third party interact, the third party has no notice that the agent is acting for a principal." Restatement (Third) of Agency § 1.04(2)(b). "A principal is unidentified if, when an agent and a third party interact, the third party has notice that the agent is acting for a principal but does not have notice of the principal's identity." Id. § 1.04(2)(c). The Court need not decide between these two options here because, in either case, the principal becomes a party to the contract. See id. §§ 6.02, 6.03.

not believe that Brookdale Senior Living Imperial Plaza, Inc. exists.[2] In short, she argues that she does not know what entity she contracted with and, consequently, she cannot be compelled to arbitrate against the undisclosed principal.

Fellerman's arguments are unavailing. Significantly, Fellerman does not raise a genuine issue as to whether ARCIP is the principal of Imperial Plaza. To the contrary, the complaint alleges that ARCIP is vicariously liable because it is the principal of Imperial Plaza. Under basic agency law, Laurence Fellerman signed the arbitration agreement on behalf of Anne Fellerman, and Paige West signed the arbitration agreement on behalf of Imperial Plaza, which is operated by ARCIP. Despite Fellerman's claims to the contrary, the circumstances surrounding contract formation, including the name of the facility and where Fellerman intended to live, support the conclusion that ARCIP, via its agent, signed the arbitration agreement.

On this issue, Habitat Architectural Group, P.A. v. Capitol Lodging Corp., 28 F. App'x 242 (4th Cir. 2002) is instructive. Habitat involved a letter agreement for architectural services between an "Owner" and "Architect." Id. at 243. A dispute arose under that agreement, and the three defendant corporations filed a motion to compel arbitration. Id. The plaintiff, Habitat Architectural Group, resisted the motion, arguing that none of the defendants was a clear party to the arbitration agreement. Id. The Fourth Circuit Court of Appeals disagreed, noting that:

> Habitat's interest in the owner's identity did not surface until appellees forced Habitat into arbitration, and Habitat needed a convenient way to escape arbitration. Habitat concedes that it agreed to arbitrate when it signed the letter agreement and that the dispute falls within the arbitration agreement. While admitting that it has agreed to arbitrate this dispute with someone, Habitat has failed to provide a clear answer as to whom Habitat believes that person or entity to be. Instead, appellant contends that the

---

[2] Neither party has been entirely forthcoming in explaining the relationships between the various entities involved in this dispute. Nevertheless, that has not prevented the Court from resolving the issues presented.

5

> court cannot compel arbitration because Habitat does not know with whom it agreed to arbitrate.

Id. at 245. Applying the North Carolina law of agency (which mirrors Virginia's on this issue), the Fourth Circuit held that Habitat could not avoid arbitration by asserting only that the defendant(s) were an undisclosed principle. Id.

As in Habitat, Fellerman admits both that she assented to the Binding Arbitration Agreement and that the agreement itself is sufficiently broad to encompass this dispute. The fact that ARCIP is the principal of Imperial Plaza is integral to the claim of vicarious liability. Moreover, there is no confusion as to whether ARCIP is a proper party to this lawsuit. Fellerman only questioned the identity of the principal to the Binding Arbitration Agreement after the Motion to Compel Arbitration was filed, seemingly to avoid obligations to which she freely admits she assented. To deny that ARCIP is a party to that agreement while simultaneously allowing Fellerman to maintain this suit against ARCIP on a theory of vicarious liability asks the Court to at once recognize and then ignore well-established agency principles. Furthermore, such a holding would undermine the strong deference accorded arbitration agreements under federal and Virginia state law. See Moses H. Cone Mem'l Hosp., 460 U.S. at 24–25; TM Delmarva Power, L.L.C. v. NCP of Va., L.L.C., 263 Va. 116, 122 (2002). Accordingly, the Court concludes that ARCIP, as an undisclosed principal to the Binding Arbitration Agreement, may properly enforce that agreement. See Restatement (Third) of Agency § 6.03.

Alternatively, the Court notes that even if Fellerman was correct that ARCIP was not a signatory to the arbitration agreement, Fellerman would still be heading to arbitration. Under certain circumstances, courts have recognized that nonsignatories of arbitration agreements may enforce that agreement against a signatory. Int'l Paper Co. v. Schwabedissen Maschinen & Anleagen GMBH, 206 F.3d 411, 418 (4th Cir. 2000). There are five theories, "'aris[ing] out of

6

common law principles of contract and agency law,'" that may support a nonsignatory's attempt to compel arbitration: "'1) incorporation by references; 2) assumption; 3) agency; 4) veil piercing/alter ego; and 5) estoppel.'" Id. (quoting Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995)). From the discussion above, even a casual reader would see the importance of agency here.[3] Unlike when evaluating whether a party is a signatory to a contract, the issue of whether a nonsignatory may enforce an arbitration agreement is governed by the "federal substantive law of arbitrability." See Int'l Paper Co., 206 F.3d at 417 n.4. But here, under either Virginia law or the "federal substantive law of arbitrability," the outcome remains the same—even though ARCIP's label may change. Whether ARCIP is an undisclosed principal signatory or an undisclosed principal nonsignatory, hornbook agency law comes into play and dictates that ARCIP may enforce the arbitration agreement against Fellerman. See Restatement (Third) of Agency §§ 6.02, 6.03.

## B. Whether the Binding Arbitration Agreement Fails Because AAA is Intergral to the Contract But Unavailable

Fellerman also contends that arbitration must fail because the prescribed forum is integral to the contract but unavailable. In 2003, the American Arbitration Association ("AAA")

---

[2] Although equitable estoppel initially appears relevant, a closer look reveals otherwise. Equitable estoppel "precludes a party from asserting rights 'he otherwise would have against another' when his own conduct renders assertion of those rights contrary to equity." Int'l Paper Co., 206 F.3d at 417–18 (citation omitted). In the arbitration context, equitable estoppel precludes a plaintiff from claiming the benefits of a contract while simultaneously denying the obligation to arbitrate. Id. at 418. Specifically, equitable estoppel applies under two scenarios. The first of these occurs when the "contract provides part of the factual foundation for every claim asserted." Id. The second occurs when claims against both a signatory and non-signatory allege "substantially interdependent and concerted misconduct." Brantley v. Republic Mortgage Ins. Co., 424 F.3d 392, 395–96 (4th Cir. 2005). Neither of these scenarios, however, is presented in this suit: Fellerman's claims arise under the common law of negligence and Fellerman's claims are not asserted against a third party who is also a signatory to the Binding Arbitration Agreement.

7

announced that it will no longer administer cases involving individual patients without a post-dispute agreement to arbitrate. AAA Healthcare Policy Statement, http://www.adr.org/sp.asp?id=32192 (last visited April 30, 2010). Fellerman contends this policy statement precludes enforcement of the Binding Arbitration Agreement, which states, "The arbitration proceedings shall be governed by the rules of AAA." Fellerman argues that this contractual choice of forum is integral to the agreement and that, because AAA is unwilling to administer this matter, the provision fails.

Virginia has yet to decide a case involving the AAA Healthcare Policy Statement or similar statements. In support of her argument, Fellerman cites Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds, 14 So.3d 695 (Miss. 2009). In Moulds, the Supreme Court of Mississippi refused arbitration in a wrongful death action brought against a nursing home on the grounds that the choice of arbitration forum was an integral part of the agreement. Id. at 707. The agreement in Moulds specified that any arbitration be administered by the AAA. Id. at 709. Because this forum was no longer available, the court held that rewriting the agreement to correct the unavailable forum would frustrate the purpose of arbitration in the first place. Id. at 707. Accordingly, the court refused to compel arbitration. Id.

Fellerman further asserts that the distinction between arbitration clauses calling for parties to be bound by AAA rules versus those calling for AAA administration is immaterial. AAA Rule R-2 states that when parties agree to arbitrate "under these rules . . . they thereby authorize the AAA to administer the arbitration" (Fellerman's Reply in Supp. Demand for Jury Trial, Ex. 4). This argument is unavailing. First, authorization to administer does not rise to the level of contractual assent to have the matter administered exclusively before that forum. Regardless, under the federal substantive law of arbitrability, the interpretation and enforcement of AAA

rules is a matter of procedural arbitrability properly settled by the arbitrator, not the court. See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83–84 (2002).

Several other jurisdictions have weighed in on whether an arbitration clause binding the parties to AAA rules is integral. As ARCIP points out, courts tend to enforce arbitration agreements whose terms specify that the parties be bound only by the rules of the AAA. Mathews v. Life Care Ctrs. of Am., Inc., 177 P.3d 867, 868 (2008) (enforced agreement that required AAA arbitrators, but not AAA administration); Blue Cross Blue Shield v. Rigas, 923 So.2d 1077, 1093 (Ala. 2005) (enforced agreement that required AAA rules, but not AAA administration); Estate of Eckstein v. Life Care Ctrs. of Am., Inc., 623 F. Supp. 2d 1235, 1238 (E.D. Wash. 2009) (same); Oesterle v. Atria Mgmt. Co., LLC, No. 09-4010-JAR, 2009 U.S. Dist. LEXIS 60057, at *26 (D. Kan. 2009) ("[T]he appropriate way to construe the arbitration provision is to read it as simply requiring arbitration in accordance with AAA rules and not AAA policy. Thus, the AAA provision covers the rules to abide by when conducting the arbitration, while AAA policy on the types of arbitrable claims is simply just that—AAA's policy."). The arbitration agreement in this action, unlike that at issue in Moulds, specifies only that arbitration proceed in accordance with AAA rules (ARCIP Mem. in Supp. Mot. to Compel Arbitration, Ex. 1). This interpretation is most consistent with the strong federal presumption favoring arbitration. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983).

Furthermore, the arbitration agreement contains a savings clause which provides that any clause rendered invalid or unenforceable shall not affect the remainder of the agreement. Thus, even if this Court were to find those provisions relating to the AAA invalid, the agreement to arbitrate generally is enforceable under 9 U.S.C. § 5 (permitting the court to appoint an arbitrator if the agreement does not specify one with particularity).

Accordingly, Defendant's Motion to Compel Arbitration is GRANTED and the Court STAYS these proceedings pending the outcome of arbitration. See id. § 3. Because Fellerman fails to raise a genuine issue of fact with respect to the question of arbitrability, her Demand for a Jury Trial on Arbitration Issues is DENIED.

### III. FELLERMAN'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

Fellerman's proposed amended complaint contains two specific revisions. First, the defendant named in the complaint, American Retirement Corporation (ARC) Imperial Plaza, Inc. is changed to ARC Imperial Plaza, Inc. The Defendant makes no objections to the first amendment, as ARCIP is the intended subject of this suit. The amended complaint also seeks to allege that ARCIP is liable in punitive damages.

When more than twenty one days have elapsed since an answer was served, leave of court is required for plaintiff to amend its complaint without defendant's consent. See Fed. R. Civ. P. 6(d), 15(a). "The court should freely give leave [to amend] when justice so requires," see Fed. R. Civ. P. 15(a)(2), unless "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." Steinburg v. Chesterfield County Planning Comm'n, 527 F.3d 377, 390 (4th Cir. 2008) (quotation marks and citation omitted). Amendments that plainly cannot survive a motion to dismiss are futile. See Perkins v. United States, 55 F.3d 910, 917 (4th Cir. 1995).

ARCIP's objection for failure to state a claim upon which relief can be granted challenges the legal sufficiency of Fellerman's claim, not the facts supporting it. Conley v. Gibson, 355 U.S. 41, 45–46 (1957); see Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007). Thus, in determining whether leave to amend should be granted, a court must regard as true all of the factual allegations in the complaint, Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007), as well as

10

any facts that could be proved that are consistent with those allegations, Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), and view those facts in the light most favorable to the plaintiff, Christopher v. Harbury, 536 U.S. 403, 406 (2002). But, since the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests," the plaintiff must allege facts that show that its claim is plausible, not merely speculative. Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964, 1966 (2007); see Fed. R. Civ. P. 8(a)(2). The court does not have to accept legal conclusions that are couched as factual allegations, Twombly, 127 S. Ct. at 1964, or "unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). But, the plaintiff does not have to show that it is likely to obtain relief; if the complaint alleges—directly or indirectly—each of the elements of "some viable legal theory," the plaintiff should be given the opportunity to prove that claim. Twombly, 127 S. Ct. at 1969 & n.8.

Because this is a diversity action, the Court must apply the law of Virginia, which "imposes a heavy burden on a plaintiff seeking punitive damages." Cummings v. Fisher-Price, Inc., 857 F. Supp. 502, 505 (W.D. Va. 1994). To sustain a claim for punitive damages, Fellerman must show willful and wanton negligence. See Booth v. Robertson, 236 Va. 269, 273 (1988). The Supreme Court of Virginia has defined this as "action undertaken in conscious disregard of another's rights, or with reckless indifference to consequences with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause the injury of another." Woods v. Mendez, 265 Va. 68, 76–77 (2003); see also Doe v. Isaacs, 265 Va. 531, 535 (2003). Beyond even gross negligence, the conduct must exhibit "criminal indifference to civil obligations." Giant of Va., Inc. v. Pigg, 207 Va. 679, 685 (1967). Those Virginia cases permitting punitive damages involve conduct that "either approaches actual

malice or exhibits extreme recklessness resulting in clearly foreseeable and immediate injury." Cummings, 857 F. Supp. at 505.

Fellerman's amended complaint proffers three grounds for an award of punitive damages. First, paragraph sixteen of the amended complaint asserts a claim of vicarious liability in punitive damages on the grounds that ARCIP ratified its employee's negligent conduct. "A principal is bound by his agent's previously unauthorized act if he ratifies the act by accepting its benefits with full knowledge of the relevant facts, or, if upon learning of the act, he fails to promptly disavow it." Kilby v. Pickurel, 240 Va. 271, 275 (1990) (internal citations omitted). Thus, to sustain its claim for punitive damages, Fellerman must plead facts which show that medical staff acted in conscious disregard of the plaintiff's rights, and that ARCIP thereafter ratified the conduct.

To establish this, Fellerman alleges that ARCIP staff failed to ensure Fellerman was wearing slip-resistant footwear, failed to use a gait belt, carelessly required Fellerman to support herself on a towel bar, and failed to care for Fellerman's injury in a timely fashion. Knowledge of these facts might support the inference that the medical personnel consciously disregarded a foreseeable and immediate risk to Fellerman. Furthermore, Fellerman asserts that ARCIP ratified these acts when it took steps to actively conceal its employee's misconduct, including the alteration and destruction of records and training materials. Taken together, these alleged facts sufficiently state a claim for punitive damages.

Second, Fellerman seeks punitive damages on the grounds that ARCIP negligently hired and retained incompetent personnel. In support of this claim, it incorporates by reference paragraphs four through ten of the amended complaint, alleging, among other things, that ARCIP knew that the nurse aide was unfit. Specifically, the complaint alleges the aide was "older and

frail, . . . 'strange,' and had 'special needs' and mental disabilities." (Am. Compl. ¶ 7.) Taken as true, these facts might support a claim that ARCIP consciously disregarded a foreseeable and immediate risk to Fellerman's safety.

Finally, Fellerman's response to ARCIP's opposition to the amended complaint argues that punitive damages are available on the grounds that ARCIP altered Fellerman's records and destroyed material components of its Fall Management Program. Fellerman cites Moskovitz v. Mount Sinai Med. Ctr., 635 N.E.2d 331, 343 (Ohio 1994) in support of her claim. In Moskovitz, the Supreme Court of Ohio permitted punitive damages when it was discovered that medical records had been falsified in an attempt to escape liability. Id. at 341. The court concluded that the defendant's total disregard for the law and the rights of the patient justified an award of punitive damages. Id. at 343 ("If the act of altering and destroying records to avoid liability is to be tolerated in our society, we can think of no better way to encourage it than to hold that punitive damages are not available in this case.").

This third basis for punitive damages has nothing to do with the character of the alleged acts of negligence and are not connected with the actions proximately resulting in Fellerman's injury. See, e.g., Mathias v. Sanders, 14 Va. Cir. 236, 236–37 (Cir. Ct. 1988) (denying a claim for punitive damages because the tort of falsification of records was not proffered as a ground for relief.). Thus, Fellerman cannot recover punitive damages on these grounds. See Brown v. Mitchell, 308 F. Supp. 2d 682, 694 (E.D. Va. 2004).

Based on the foregoing analysis, the Court GRANTS Fellerman's Motion for Leave to Amend Complaint with the admonition that alteration or falsification of records does not provide an independent basis in support of the claim for punitive damages.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS ARCIP's Motion to Compel Arbitration, DENIES Fellerman's Demand for Jury Trial on Arbitration Issues, and GRANTS Fellerman's Motion for Leave to Amend Complaint.

Let the Clerk send a copy of this memorandum to all counsel of record. An appropriate order will issue.

It is SO ORDERED.

_____/s/_____
James R. Spencer
Chief United States District Judge

ENTERED this  3rd  day of May 2010